**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 24-MJ-61 (ZMF)** |
| | : | |
| **GIANNI ROBINSON,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

Mr. Gianni Robinson (hereinafter, "Defendant-3 (G. Robinson)") is a member of a robbery crew that repeatedly terrorized the Walgreens store located at 801 7th Street, Northwest, Washington D.C. (the "Chinatown Walgreens"). Defendant-3 (G. Robinson) worked with Kamanye Williams (hereinafter, "Defendant-2 (K. Williams)"), his uncle and manager of the Chinatown Walgreens (hereinafter "Defendant-1 (M. Robinson)"), and his romantic partner and manager of the Chinatown Walgreens (hereinafter "Suspect-4"), to commit armed robberies of the Chinatown Walgreens nearly once a month since July of 2023. The evidence, as discussed in detail in this memorandum, shows that each robbery was the result of a carefully and meticulously planned inside job. The defendant and his co-defendants' actions have needlessly exposed numerous employees of the Chinatown Walgreens to gun violence and damaged the sense of community safety in downtown Washington D.C. Pursuant to the 18 U.S.C. § 3142(g) factors analyzed below, there are no conditions or combination of conditions short of detention will ensure the safety of the community.

This memorandum proffers three types of evidence: (1) cell phone location information ("Cell Site Evidence");[1] (2) text messages between the co-conspirators seized from the defendants'

---

[1]      The Cell Site Evidence discussed in this memorandum involves the approximate location of the subject cell phone when it initiated contact with a particular cell phone company's network.

cell phones and iCloud accounts ("Text Message Evidence"); and (3) surveillance footage from the Chinatown Walgreens, the surrounding areas, and the residence of Defendant-3 (G. Robinson) and Suspect-4 (as explained below, the two shared a residence during the conspiracy) ("Surveillance Evidence").   These three categories of evidence show Defendant-3 (G. Robinson) was a leader in creating the blueprint for the conspiracy, planned and provided integral assistance for a majority of the robberies, and his residence was used as the meetup location both before and after numerous additional robberies.

Moreover, the investigation thus far shows the scope of Defendant-3 (G. Robinson)'s criminality extends far beyond the monthly robberies of the Chinatown Walgreens.  Instead, the evidence shows that Defendant-3 (G. Robinson) trafficked in illegal firearms and illegal controlled substances with Defendant-2 (K. Williams) and his uncle Defendant-1 (M. Robinson), planned the robberies of other potential victims and other businesses, and was involved in numerous additional failed robbery attempts of the same Chinatown Walgreens.

There is a statutory presumption that Defendant-3 (G. Robinson) should be held in this matter, as there is evidence to show that Defendant-3 (G. Robinson) violated 18 U.S.C § 924(c)(1)(A)(ii) (Using, Carrying, Possessing, and Brandishing a Firearm During and In Relation to a Crime of Violence) through commission of the robberies in this case.  *See* 18 U.S.C. § 3142(e)(3)(B).  The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. §§ 3142(f)(1)(A) (crime of violence) and

---

Cellular phones use radio frequencies to communicate. When a cellular phone is "on," and not in "Airplane" mode, the cellular phone constantly scans its environment, evaluating and ranking which cell towers (sometimes referred to as cell sites) have the strongest signal. When a cellular phone places or receives a call, it will utilize the cellular tower and sector with the strongest signal. The tower with the strongest signal generally comes from the tower that is closest to the phone, or in its direct line of sight.

3142(f)(1)(E) (felony involving possession of a dangerous weapon).

## FACTUAL BACKGROUND

Walgreens is a company that operates the second-largest pharmacy store chain in the United States and is headquartered in Deerfield, Illinois. It maintains numerous stores in Washington D.C. and generally specializes in filling prescriptions, health and wellness products, and groceries. The Chinatown Walgreens is comprised of three floors separated by escalator. There is one main entrance of the Chinatown Walgreens located at the intersection of H Street Northwest and 7th Street Northwest and one rear exit into an alley that can exit out to I Street Northwest and H Street Northwest. The first and second floors are accessible to the general public. The basement of the Chinatown Walgreens includes the pharmacy and grocery area that is accessible to the general public, and an employee area that is in the rear of the store. This employee area is separated by a locked door with a code that is only known to Walgreens employees. Pictures of this employee area door are below.



Within this employee area is a manager's office (the "Manager's Office") that is separated by another locked door with a code. The Manager's Office features a code that is only known to other managers of the Walgreens, and not individual employees. The Manager's Office is seen in the below picture with the with the red arrow.

3



Employee protocol at the Chinatown Walgreens dictates that an employee will bring cash from each cash register to the Manager's Office around close of business in order to account for the store's daily inflow and outflow of cash. The timing of cash transfer to the Manager's Office may change on a day-to-day basis due to different sections of the Chinatown Walgreens closing at different times (e.g., the pharmacy may close at a different time than the front cash register).

The Chinatown Walgreens has been subjected to seven (7) armed robberies, nearly once a month, since last summer on July 18, 2023, August 2, 2023, September 2, 2023, November 10, 2023, December 4, 2023, January 9, 2024, and February 11, 2024. And each of these robberies follows the same *modus operandi*: a masked gunman will enter the store in the evening as cash is being transported, or has already been transported, to the Manager's Office. The gunman will then use a firearm and either force an employee to enter the code to the Manager's Office, or will access the Manager's Office themselves by entering the code. The gunman will then rob whichever employee or employees are present within the Manager's Office at the time and will flee the store through the rear exit. In total, the robbers have made off with nearly $30,000.00 in United States Currency, and a firearm belonging to an armed Special Police Officer.

As discussed below, the two insiders took turns pretending to be the "victim" manager on duty, knowing that the robberies would be captured on internal surveillance camera and later scrutinized by law enforcement. Defendant-1 (M. Robinson) played the role of "victim" during the August 2, 2023, September 2, 2023, and February 11, 2024, robberies, while Suspect-4 did so during the July 18, 2023 and January 9, 2024 robberies.  The robberies committed on November 10, 2023 and December 4, 2023 involved real victim employees of the Chinatown Walgreens and SPOs stationed at the location to protect it.  The evidence furthermore shows that Defendant-2 (K. Williams) was "on call" as the robber for both Defendant-3 (G. Robinson) and Defendant-1 (M. Robinson), who would separately or collectively message Defendant-2 (K. Williams) when the available cash in the Manager's Office was large enough for a big payout.   Defendant-3 (G. Robinson) and Defendant-1 (M. Robinson) both took turns initiating and coordinating the robberies.

<u>The Conspiracy Begins</u>

*Text Message Evidence*[2]

The evidence shows that Defendant-3 (G. Robinson) was one of the leaders in formulating the conspiracy and in carrying out the first robbery. Text Message Evidence shows Defendant-2 (K. Williams) and Defendant-3 (G. Robinson) began orchestrating the first robbery of the Chinatown Walgreens nearly three weeks before its commission.  While the government is continuing to review voluminous records of digital evidence, it has identified one of the earliest

---

[2]     The government has included some screenshots of the text messages throughout this memorandum but has redacted portions of the numbers and left only the last four digits for identification purposes.  The last four digits of the phone numbers for each are as follows: -4448 for Defendant-1 (M. Robinson); -3963 for Defendant-2 (K. Williams); -4228 for Defendant-3 (G. Robinson); and -7190 for Suspect-4. The government notes that Suspect-4 utilized two different phone numbers different the conspiracy.

messages in the conspiracy sent by Defendant-3 (G. Robinson) to Defendant-2 (K. Williams):



In response to the above message, Defendant-2 (K. Williams) stated "Aight stop talking bout that sh*t in the messages . . ."

The two then discussed the purchase and sale of different types of firearms, where Defendant-3 (G. Robinson) offered to connect Defendant-2 (K. Williams), a convicted felon and gun offender,[3] to two different firearm suppliers.  Defendant-3 (G. Robinson)'s message also shows he claimed that he considered buying a ghost gun with a "blatt," also known as a switch.  A switch converts an otherwise semi-automatic pistol into a fully functioning machinegun capable of automatic fire.[4]



---

[3]    Defendant-2 (K. Williams) was previously convicted on January 3, 2023 of Carrying a Pistol Without a License in D.C. Superior Court Case Number 2021 CF2 3217.  His term of supervised probation expired on January 3, 2024.

[4]    As discussed in this memorandum below, during the execution of a residential search warrant on Defendant-3 (G. Robinson) and Suspect-4's residence on February 12, 2024, a loaded Glock 45 pistol with a sixteen (16) round magazine was recovered in an unsecured state from the bedroom floor.

As seen in the below messages, Defendant-2 (K. Williams) claims he planned to travel to Virginia to purchase a Glock 27, but that he needed a "finesse" because he was unable to go in and purchase it himself (presumably due to his status as a convicted felon). In response, Defendant-3 (G. Robinson) mentioned that he refused to go through the proper channels to purchase a firearm.



The discussion continued, and even waded into territories where Defendant-3 (G. Robinson) discussed robbing an individual who purchased a Glock 43. Defendant-3 (G. Robinson)

and Defendant-2 (K. Williams) discussed the most opportune time to rob the potential victim and that the robbery would be "cake."[5]  Interspersed between these discussions of gun trafficking and potential robbery victims is the trafficking of large quantities of marijuana, which the parties intended to resell for profit.[6]

In the coming days the two began to plan the robbery of the Chinatown Walgreens once more, with messages showing Defendant-3 (G. Robinson) was communicating with Defendant-1 (M. Robinson) as to the amount of cash in the Manager's Office on the evenings of July 1, 2023, July 2, 2023, and July 3, 2023.  On July 3, 2023, Defendant-3 (G. Robinson) substantially advanced the robbery conspiracy by setting up a three-way call to provide Defendant-2 (K. Williams) with access codes for the Manager's Office.  An example of Defendant-3 (G. Robinson)'s detailed planning of this conspiracy is seen here, where Defendant-3 (G. Robinson) relayed information from Suspect-4 that Defendant-2 (K. Williams) was to act like he knows "exactly what [he's] doing" so that law enforcement believed it was an employee that performed the robbery, presumably in order to take suspicion off of Suspect-4, who would be inside the Manager's Office at the time of the robbery.

---

[5]     In text messages after the November 10, 2023 robbery, Defendant-3 (Gianni Robinson) and Defendant-2 (K. Williams) also made additional plans to rob local pharmacies.

[6]     In text messages dated around October of 2023, Defendant-3 (G. Robinson) and Defendant-2 (K. Williams) are seen discussing the sale and purchase of "blues," which is slang for a blue pill stamped with "M" and "30." Legitimate M30 pills contain Oxycodone Hydrochloride, which is an opioid medication often prescribed to treat severe pain.  Counterfeit M30 pills often contain Fentanyl. In messages dated December 10, 2023, Defendant-3 (G. Robinson) states that he got pills stamped with "K" and "56" for Defendant-1 (M. Robinson).  Legitimate K56 pills contain Oxycodone Hydrochloride as well.  When Defendant-1 (M. Robinson) did not claim the pills, Defendant-3 (G. Robinson) states that he sold them to another buyer instead.



While the Chinatown Walgreens was not robbed that evening, the text messages indicate that it was only due to Defendant-3 (G. Robinson) falling asleep, as Defendant-2 (K. Williams) claimed he was present in the store that evening.  Defendant-2 (K. Williams) remarked on July 4, 2023, that the evening was not a waste, however, as he "knows the blueprint now."  From July 4, 2023, to July 11, 2023, Defendant-3 (G. Robinson) and Defendant-2 (K. Williams) continued discussing the most opportune times to rob the Chinatown Walgreens, including an agreement to return to Defendant-3 (G. Robinson) and Suspect-4's residence after the robbery.

The next failed robbery attempt occurred on July 12, 2023.  The government has seized a conversation from that date that clearly demonstrates Defendant-3 (G. Robinson)'s role in the conspiracy.  He advised Defendant-2 (K. Williams) of insider information learned from Suspect-4 and described the exact steps Defendant-2 (K. Williams) is to take, down to the minute, in order to rob the Chinatown Walgreens.  Below are the messages sent from Defendant-3 (G. Robinson) to Defendant-2 (K. Williams).













Around 8 p.m. that evening, Defendant-3 (G. Robinson) advised that he had a "9" on him, which is believed to be a firearm capable of accepting 9-millimeter ammunition. While no robbery of the Chinatown Walgreens occurred that evening, text messages show that Defendant-2 (K. Williams) was unable to travel from his residence in Maryland to the Chinatown Walgreens due to his inability to find a getaway driver.

The duo then discussed robbing the Chinatown Walgreens again on July 13, 2023, with Defendant-3 (G. Robinson) specifically noting that there would be ample cash due to a concert taking place nearby. Public records show that Erykah Badu, a prominent singer and songwriter, played at the Capitol One Arena the evening of July 13, 2023. As captured in the text messages, Defendant-3 (G. Robinson) pushed Defendant-2 (K. Williams) to move forward with the robbery that evening; however, because Suspect-4 was not on duty until July 18, 2023, it was agreed upon

that they hold off.

Robbery 1 – July 18, 2023

*Surveillance Evidence*

Internal Chinatown Walgreens surveillance video from July 18, 2023, shows an individual wearing a black facemask, black hooded sweatshirt, and grey backpack (the "July Robber") entering the Chinatown Walgreens at approximately 9:07 p.m.[7] After loitering in the store for a period of time and making calls on his cell phone, the July Robber saw an employee ("Victim-1") open the door to the employee area and ran in behind him with a handgun in his right hand. The July Robber then pointed the handgun at Victim-1 and forced him towards the Manager's Office. At this time, Suspect-4 and one other employee ("Victim-2") were inside of the Manager's Office. While being held at gunpoint from behind, Victim-1 knocked on the door to the Manager's Office. At approximately 9:24 p.m., Suspect-4 opened the door. The July Robber then pushed Victim-1 into the Manager's Office and closed the door behind him.

Once inside the Manager's Office, the July Robber held the firearm in his hand and threatened "Do not do anything" or he would "bust everyone up."

The July Robber proceeded to push Victim-1 and Victim-2 under desks inside of the Office and placed his backpack next to Suspect-4. Suspect-4 is seen unlocking the safe and placing approximately $4,000.00 - $5,000.00 in United States Currency into the July Robber's backpack. The July Robber then slung his backpack over his shoulder and fled through the rear entrance of the Chinatown Walgreens.

---

[7]     Although few identifying details about the Robber for any of the Chinatown Walgreens robberies are visible on the video, given the mask and hoodie worn by the robber, the robber for all of the robberies has a consistent general stature, height, and build. That stature, height, and build is also generally consistent with Defendant-2 (K. Williams).

12

*Text Message Evidence*

Text Message Evidence shows the July Robber is Defendant-2 (Kamanye Williams) and that the July 18 robbery was put into motion by Defendant-3 (G. Robinson). Earlier that day, Defendant-3 (G. Robinson) advised Defendant-2 (K. Williams) that the Manager's Office would be flush with cash at around 9 p.m. that evening. Defendant-2 (K. Williams) sent messages in response about securing a getaway driver, and then proceeded towards the Chinatown Walgreens at around 8:31 p.m.

At 8:58 p.m., Defendant-2 (K. Williams) stated that he was "pulling up." Defendant-3 (G. Robinson) stated that he would see if Suspect-4 is ready. Defendant-3 (G. Robinson) was unable to get a hold of Suspect-4 and indicated that he would call Defendant-1 (M. Robinson) instead. At 9:05 p.m., Defendant-3 (G. Robinson) gave the green light to commence the robbery, as shown below. Approximately two (2) minutes after the first below text message, Defendant-2 (K. Williams) is seen on surveillance entering the Chinatown Walgreens.







Defendant-2 (K. Williams) texted in response that he was "inside now," and "by the cooler" and "by the escalator," but did not see Suspect-4. Text messages between the two cease at 9:13 p.m. The next text message comes from Defendant-3 (G. Robinson) at 9:34 p.m.: "call me." As discussed above, surveillance video shows the robbery occurred during this time period when text messages ceased.

Text messages between the two later that evening show that Defendant-2 (K. Williams) and Defendant-3 (G. Robinson) met in person. As Defendant-3 (G. Robinson) was waiting for Defendant-2 (K. Williams) to meet him, they discussed how to split the proceeds from the robbery. Defendant-3 (G. Robinson) sent the below message:



In the days after the July 18, 2023, robbery, the Metropolitan Police Department issued a

"Person of Interest" video and posted it onto YouTube.  *See* Washington DC Metropolitan Police Department, *Person of Interest in Armed Robbery (Gun), 800 b/o 7th St, NW, on July 18, 2023*, YouTube (July 20, 2023), https://www.youtube.com/watch?v=KZwMQQzhGOM.   The video solicited the help of the general public in identifying the July Robber and showed surveillance footage as he walked through the Chinatown Walgreens on the evening of the July 18, 2023, robbery.

On July 22, 2023, Defendant-3 (G. Robinson) sent the YouTube clip to Defendant-2 (K. Williams) and Defendant-3 (G. Robinson) -- joking that whoever the robber was, he was "looking sweet."

*Cell Site Evidence*

The Cell Site evidence is consistent with Defendant-2 (K. Williams) being the July Robber. Between 6:40 p.m. to 8:30 p.m., Defendant-2 (K. Williams)'s cell phone is seen in Maryland. Between 9:01 p.m. to 9:27 p.m. Defendant-2 (K. Williams) cell phone is seen connecting to cell towers within the vicinity of the Chinatown Walgreens.   By 9:48 p.m., Defendant-2 (K. Williams)'s cell phone is seen in the vicinity of the meetup location explicitly discussed by Defendant-2 (K. Williams) and Defendant-3 (G. Robinson) in earlier text messages.

<u>Robbery Planning - July 24 – August 1, 2023</u>

As captured in the text messages, Defendant-3 (G. Robinson) pushed for another robbery of the Chinatown Walgreens almost immediately, with the plan involving Defendant-1 (M. Robinson) posing as the "victim" in the Manager's Office instead of Suspect-4.

On July 24, July 26, July 27, July 29, July 30, and August 1, 2023, Defendant-3 (G. Robinson) advised Defendant-2 (K. Williams) that Defendant-1 (M. Robinson) was the manager on duty and that the Manager's Offices were flush with cash.   Defendant-3 (G. Robinson)

specifically advised on multiple occasions that Defendant-1 (M. Robinson) wanted to be "hit" with the firearm on camera, presumably in order to fool law enforcement.

However, due to Defendant-2 (K. Williams) inability to find a vehicle or a getaway driver, as well as law enforcement presence in the Chinatown Walgreens on one occasion, the two were unable to rob the store.  Defendant-2 (K. Williams) and Defendant-3 (G. Robinson) began discussing the need for a permanent vehicle, and Defendant-2 (K. Williams) stated that he "almost had a free joint today" but an accomplice "f*cked it up."[8]

Robbery 2 - August 2, 2023

*Surveillance Evidence*

On August 2, 2023, at around 8:55 p.m., the Chinatown Walgreens was robbed at gunpoint while Defendant-1 (M. Robinson) was the manager on duty.  Around this time, Defendant-1 (M. Robinson) is seen on surveillance footage walking towards the Manager's Office with the cash register till when he is approached from behind by an individual wearing all black with a black hooded sweatshirt, black facemask, and multi-colored backpack (hereinafter, "August Robber"). August Robber then pushed Defendant-1 (M. Robinson) into the employee area where Defendant-1 (M. Robinson) entered the code to the Manager's Office. As Defendant-1 (M. Robinson) and August Robber entered the Manager's Office, August Robber is seen holding a handgun in its left hand.

Defendant-1 (M. Robinson) is then seen unlocking a safe in the Manager's Office and emptying multiple cash register tills into August Robber's backpack. August Robber placed

---

[8]     Additional Text Message Evidence exists to show Defendant-3 (G. Robinson)'s involvement in stolen vehicles.  On October 21, 2023, Defendant-3 (G. Robinson) texted Defendant-1 (M. Robinson) "I'm hit had to pay rent WiFi & electric.  I'm waitin for this lady to buy this handicap sticker I got today from this stolen car."

approximately $6,000.00 in United States Currency into his backpack. As Defendant-1 (M. Robinson) is doing so, August Robber is seen placing his handgun on a chair behind Defendant-1 (M. Robinson), as seen in the below surveillance clip.



August Robber is then seen on surveillance camera taking possession of the firearm again and fleeing from the Manager's Office exiting through the rear alley.

*Text Message Evidence*

Text Message Evidence combined with Cell Site Evidence shows that Defendant-2 (K. Williams) was the August Robber, and that Defendant-3 (G. Robinson) and Suspect-4's residence was used as a staging ground prior to and after the robbery. Cell Site evidence shows that it is likely Defendant-2 (K. Williams) then met up with Defendant-1 (M. Robinson) (after leaving

Defendant-3 (G. Robinson) and Suspect-4's residence).

Specifically, prior to the August robbery, at around 5:50 p.m., Defendant-3 (G. Robinson) and Defendant-2 (K. Williams) exchange text messages showing Defendant-2 (K. Williams) taking an Uber to Defendant-3 (G. Robinson) and Suspect-4's residence.  Text messages cease between the two at 6:41 p.m. and begin again right after the robbery at 8:57 p.m. when Defendant-2 (K. Williams) texts Defendant-3 (G. Robinson) "I'm down here."

Then, two days after the August 2, 2023, robbery, Suspect-4 messaged Defendant-1 (M. Robinson), concerned as to believability of the fake robbery after having reviewed the surveillance footage.  The relevant messages are seen below, with Suspect-4's messages on the left and Defendant-1 (M. Robinson) on the right:





*Cell Site Evidence*

The Cell Site Evidence is also consistent with Defendant-2 (K. Williams) being the August

Robber and the use of Defendant-3 (G. Robinson) and Suspect-4's residence as the rendezvous

point before and after the robbery.   Before the robbery, at around 6:54 p.m., Defendant-2 (K.

Williams)'s cell phone is seen within the vicinity of Defendant-3 (G. Robinson) and Suspect-4's residence, along with Defendant-3 (G. Robinson)'s cell phone.  Immediately after the robbery, at 8:50 p.m., Defendant-2 (K. Williams)'s phone is seen near the Chinatown Walgreens, and by 9:09 p.m. it is back within the vicinity of Defendant-3 (G. Robinson) and Suspect-4's residence, where Defendant-3 (G. Robinson)'s cell phone remained the entire time.  While Defendant-3 (G. Robinson)'s cell phone remains in the vicinity of his and Suspect-4's residence for the remainder of the evening, Defendant-2 (K. Williams)'s cell phone is next seen within the vicinity of Defendant-1 (M. Robinson)'s residence at 11:09 p.m., before finally returning to the vicinity of Defendant-2 (K. Williams)'s residence at 11:58 p.m.

<u>Robbery Planning - August – September</u>

During this period, Defendant-3 (G. Robinson) is seen in text messages continuing to pass on information to Defendant-2 (K. Williams) from Defendant-1 (M. Robinson) and Suspect-4 as to the available cash in the Manager's Office, nearly on a daily basis.

Text messages around this time demonstrate the co-conspirator's coordination and efforts to make the robberies appear real.  As seen in an August 29, 2023, text message exchange below between Defendant-3 (G. Robinson) and Defendant-2 (K. Williams), Defendant-3 (G. Robinson) claims Suspect-4 should no longer play the role of "victim" unless Defendant-2 (K. Williams) pretends to stage an assault on her as well.  Defendant-2 (K. Williams) brazenly claims that he wants to "go in violently now, I'm tired of this not hitting what we supposed to hit."  Defendant-3 (G. Robinson) then indicates that his "unc" is prepared to be the victim and be "smack[ed] out" during the robbery.  (As discussed below, it appears that during the next robbery, that is exactly what then happened, with Defendant-1 (M. Robinson) pretending to be the victim and getting smacked in the head with a firearm.)

20



**Nvm**
**We going wait another day cause bae doing it**

Apple iMessage
Direction: Incoming
Sender: ████████ 4228 [██████ 4228]
Sender Phone: ██████ 4228
Recipient: ████████████████████
Message ID: ████████████████████
Aug 29, 2023, 7:45 PM



**Don't even want her to be the victim**

Apple iMessage
Direction: Incoming
Sender: ████████ 228 [██████ 4228]
Sender Phone: ██████ 4228
Recipient: ████████████████████
Message ID: ████████████████████
Aug 29, 2023, 7:45 PM



**Aight**

Apple iMessage
Direction: Outgoing
Sender: ████████ 3963 [██████ 3963]
Sender Phone: ██████ 3963
Recipient: ████████████████████
Message ID: ████████████████████
Aug 29, 2023, 7:45 PM



**Cause I don't want her to freeze up**
**No unless u push her fake grab her hair n shit**

Apple iMessage
Direction: Incoming
Sender: ████████ 4228 [██████ 4228]
Sender Phone: ██████ 4228
Recipient: ████████████████████
Message ID: ████████████████████
Aug 29, 2023, 7:46 PM







During this same time period, in text messages unrelated to the robberies, Defendant-3 (G. Robinson)'s messages show his consistent access to firearms and his willingness to use them. In text messages between Defendant-1 (M. Robinson) and Defendant-3 (G. Robinson), Defendant-1 (M. Robinson) noted that a person he previously "beat the sh*t" out of confronted him in person. In response, Defendant-3 (G. Robinson) offered to come to him with a firearm while wearing a

mask, because "I got some anger to let off anyway."

<u>Robbery 3 – September 2, 2023</u>

The Chinatown Walgreens was once again robbed at gunpoint on September 2, 2023.  The

sequence of events mirrored the July 18, 2023 robbery with two additional details: (1) Defendant-

1 (M. Robinson) was located within the Manager's Office with one other employee present

("Victim-3"), and (2) during the robbery, the masked gunman appeared to hit Defendant-1 (M.

Robinson) in the head with his firearm, as seen in the surveillance clip below:



Like he did after the July 18, 2023 robbery, Defendant-3 (G. Robinson), again sent a

YouTube clip to Defendant-2 (K. Williams), this time, with a laughing emoji.  And like the July

18, 2023, robbery, the clip was posted by the Metropolitan Police Department asking for public

assistance in identifying the September 2, 2023, robber.  *See* Washington DC Metropolitan Police

Department, *Person of Interest in Armed Robbery (Gun), 800 b/o 7th St, NW, on September 2,*

*2023*, YouTube (October 19, 2023),  https://www.youtube.com/watch?v=KJsgB4EO5eM.

<u>Robbery Planning - September – November 9, 2024</u>

In the month of October, the defendants did not rob the Chinatown Walgreens, in part, according to the defendants' text message conversations, because Defendant-3 (G. Robinson) and Defendant-2 (K. Williams) believed that the amount of cash in the Manager's Office was not enough in prior robberies.  For instance, on November 1, 2024, Defendant-3 (G. Robinson) expressed that a $1,200.00 cut per person was "too light" to make a robbery worth the trouble. Nevertheless, between November 8 and November 10, 2023, the two prepared to rob the Chinatown Walgreens once more, on Defendant-1 (M. Robinson)'s representation that the Manager's Office would contain more cash.   Defendant-1 (M. Robinson) is seen in text messages to Defendant-3 (G. Robinson) stating they needed to restart their robbery scheme, in part because Defendant-1 (M. Robinson) was spending too much money maintaining his Mercedes, which as discussed below, was used in the November 10, 2023 robbery.

<u>Robbery 4 - November 10, 2023</u>

*Surveillance Evidence*

As detailed below, the Chinatown Walgreens was robbed at gunpoint once again on November 10, 2023.  Notably, this was the first robbery where neither Suspect-4 nor Defendant-1 (M. Robinson) were present within the Manager's Office at the time of the robbery.  Prior to this robbery, the robber (the "November Robber") arrived in a White Mercedes and used a rented a Lyft scooter, which he then used to travel to the Chinatown Walgreens. That White Mercedes has since been seized from Defendant-1 (M. Robinson)'s residence during his arrest, and records show the Lyft Scooter was rented by Defendant-1 (M. Robinson).

Surveillance footage shows the November Robber riding the scooter to the Chinatown Walgreens and entering through the main entrance at approximately 9:00 p.m. November Robber

is seen wearing a white hooded sweatshirt, a black facemask, and a black Reebok branded backpack. November Robber then proceeded towards the Manager's Office. Internal surveillance video shows November Robber holding a cell phone in his hand and referencing it while entering the manager's code to the locked door, as seen below.



At approximately 9:15 p.m., November Robber entered the Manager's Office and pointed a silver handgun with a black tip at the employee who was counting cash from the day (hereinafter, "Victim-4").  November Robber stated, "give me all the money, it's not even yours, hang up the phone."

November Robber then placed approximately $7,700.00 in United States Currency into his backpack before fleeing from the office and exiting through the rear alley. External surveillance footage shows November Robber exit the rear of the Chinatown Walgreens and exit towards I Street Northwest, appearing to have changed out of, or placed a dark article of clothing over, his white hooded sweatshirt.  Additional external surveillance footage shows November Robber being picked up by what appeared to be the same White Mercedes from earlier, parked in front of the

Meridian, an apartment complex at 450 Massachusetts Avenue, Northwest.

*Text Message Evidence*

Text Message Evidence from Defendants 1, 2, and 3 show that the November Robber is Defendant-2 (K. Williams).  On the day of the robbery, at 3:09 p.m., Defendant-1 (M. Robinson) texted Defendant-2 (K. Williams): "today is the day." At 3:16 p.m., Defendant-2 (K. Williams) texted Defendant-3 (G. Robinson): "Unc say that sh*t green light today [laughing emoji]."

Around the time of the robbery, at 9:04 p.m., Defendant-2 (K. Williams) advises Defendant-1 (M. Robinson) that there is security at the door, and the two have the below text message exchange:



Once the robbery was completed, Defendant-3 (G. Robinson) sent Defendant-2 (K. Williams) a message complaining that the amount of cash in the Manager's Office was once again not enough, and that he was displeased he received only $200.00 as his cut for the robbery. The day after the robbery, Defendant-3 (G. Robinson) texted Defendant-2 (K. Williams) that the local media had picked up the story on the robbery and that he had told Defendant-1 (M. Robinson) to wait on the robbery. In response, Defendant-2 (K. Williams), sent the below message:



*Cell Site Evidence*

Cell Site Evidence shows Defendant-1 (M. Robinson)'s cell phone and Defendant-2 (K. Williams)'s cell phone in the same area near Defendant-1 (M. Robinson)'s residence prior to, and after the robbery. The two cell phones are also seen near the scene of the scooter rental and the Chinatown Walgreens store at the time of the rental and robbery, respectively.

<u>Robbery Planning – November – December 3, 2023</u>

Two days prior to the December 4, 2023, robbery, Defendant-1 (M. Robinson) sent Defendant-2 (K. Williams) text messages offering to provide Defendant-2 (K. Williams) a firearm using Defendant-3 (G. Robinson) and Suspect-4's residence as the drop off point. Defendant-1 (M. Robinson) also states he'd drop off the "Chopstick," a slang term for an assault rifle, at the residence as well.

On December 3, 2023, as shown in the messages, Defendant-2 (K. Williams) entered the Chinatown Walgreens and attempted to rob the store. Ultimately, the robbery was a failure as

Defendant-2 (K. Williams) noted the presence of two armed SPOs and text messages show that Defendant-1 (M. Robinson) did not know the code that day due to it being changed after his shift. Disturbingly, Defendant-1 (M. Robinson) suggested to Defendant-2 (K. Williams) that he enter violently and "cook they ass."

<u>Robbery 5  December 4, 2023</u>

*Surveillance Evidence*

On December 4, 2023, law enforcement received a call for service for the report of an armed robbery of the Chinatown Walgreens.  At approximately 7:43 p.m., an armed Special Police Officer ("SPO") and an employee (hereinafter, "Victim-5" and "Victim-6") were transporting a cart containing cash registers to the Manager's Office.  Upon arriving at the door leading into the hallway outside of the office, an individual wearing apparel similar to the robber in prior robberies (the "December Robber") grabbed the Victim-5's jacket and produced a black and silver handgun. The December Robber then removed Victim-5's handgun from the holster and demanded the Victim-5 and Victim-6 open the office door. Upon entering the office, the December Robber stated, "You know what the drill is. Give it all! I want all of it!"  Victim-6 then grabbed the money and placed it into the December Robber's grey backpack.  The December Robber then exited through the back of the store via an elevator at approximately 7:48 p.m.

December Robber took approximately $5,000.00 in cash and the SPO's firearm -- a Glock 19.

*Text Message Evidence*

On the morning of December 4, 2023 robbery, Defendant-1 (M. Robinson) texted Defendant-2 (K. Williams) "Everything in place brodie" and "Brodie it's a go."

Around thirty minutes prior to the robbery, Defendant-2 (K. Williams) texted Defendant-

3 (G. Robinson) at 7:15 p.m. "come downstairs." Two minutes before the robbery, Defendant-2 (K. Williams) then texted Defendant-1 (M. Robinson) at 7:41 p.m. "I'm about to walk in."

*Cell Site Evidence*

Cell Site Evidence shows Defendant-2's (K. Williams) phone and Defendant-3's (G. Robinson) phone within the vicinity of Defendant-3 (G. Robinsons) and Suspect-4's residence immediately prior to the robbery. During the robbery, Defendant-2's (K. Williams) phone is within the vicinity of the Chinatown Walgreens. At 7:54 p.m., immediately after the robbery, Defendant-2's (K. Williams) phone calls Defendant-3's (G. Robinson). At this time, the two cell phones are seen within the same vicinity near Defendant-3 (G. Robinson) and Suspect-4's residence. At approximately 8:13 p.m., Defendant-3's (G. Robinson) phone calls Defendant-1's (M. Robinson) phone. At this time, the two cell phones are seen within the vicinity of Defendant-1's (M. Robinson)'s residence. At approximately 9:02 p.m., Defendant-1's (M. Robinson) phone, Defendant-2's (K. Williams) phone, and Defendant-3's (G. Robinson) phone are all seen within the vicinity of Defendant-2's (K. Williams) residence.

## Robbery 6 – January 9, 2024

*Surveillance Evidence*

On January 9, 2024, at approximately 7:25 p.m., surveillance footage at Defendant-3 (G. Robinson)'s and Suspect-4's residence in Washington D.C. showed individuals believed to be Defendant-3 (G. Robinson) and Defendant-2 (K. Williams) walking through the lobby. The person believed to be Defendant-2 (K. Williams) was wearing the same black Reebok branded backpack as seen in the prior robberies and the person believed to be Defendant-3 (G. Robinson) was wearing similar clothing observed worn by Defendant-3 (G. Robinson) earlier in the day while taking the trash out to the dumpster.

After exiting the lobby of Defendant-3 (G. Robinson) and Suspect-4's residence, the two are seen entering a Black Cadillac matching the description of a Black Cadillac seen by law enforcement at Defendant-2 (K. Williams)'s residence.

At approximately 8:03 p.m., an employee of the Chinatown Walgreens was stocking shelves near the Manager's Office ("Victim-7") when the individual in the above-described surveillance footage (the "January Robber") approached with a handgun and directed him to go back through the employee area to the Manager's Office.

At the time this occurred, Suspect-4 and an armed SPO ("Victim-8") were seated in the Manager's Office counting cash from the day.  Defendant-1 (M. Robinson) was also present in the store and was working at the cash registers on the first floor.

Surveillance records and law enforcement interviews show Victim-7 knocking on the Manager's Office. Suspect-4 opened the door Manager's Office to see the Walgreens employee being held at gunpoint by the January Robber.  The January Robber then forced Victim-7 inside the manager's office and held all three at gunpoint while demanding Suspect-4 to empty the cash registers into his black Reebok backpack.  During the robbery, January Robber repeatedly asked Victim-8 where its firearm was, which was hidden under its jacket at the time.  Suspect-4 emptied approximately $3,000.00 into the backpack and the January Robber fled the Chinatown Walgreens through the rear entrance at approximately 8:05 p.m.

Exterior surveillance video shows a Black Cadillac picking up the January Robber after the robbery after exiting the Chinatown Walgreens, exactly where Defendant-2 (K. Williams) was picked up after the November 10, 2023, robbery.

*Text Message Evidence*

In the days prior to this robbery, Text Messages show that Defendant-1 (M. Robinson)

continued to provide Defendant-2 (K. Williams) with insider knowledge of the Chinatown Walgreens, advising him how many armed security guards were present in the store, which employees possessed the code to the Manager's Office, the timing of when cash would enter the Manager's Office, and the best times to perform a robbery.  On January 6, 7, and 8 of 2024, Defendant-2 (K. Williams) was present in the Chinatown Walgreens attempting to find the most opportune time to rob the store, while keeping in contact with both Defendant-3 (G. Robinson) and Defendant-1 (M. Robinson).  At one point, Defendant-2 (K. Williams) asked Defendant-3 (G. Robinson) to be the getaway driver for Defendant-2 (K. Williams).  In response, Defendant-3 (G. Robinson) states "just tell me where to park."

After the January robbery, Defendant-2 (K. Williams) complained in text messages to Defendant-3 (G. Robinson) that the available cash after their split was too light – $1,060 excluding quarters.  In the days prior to the robbery, Suspect-4 exchanged text messages with Defendant-1 (M. Robinson) dated January 7, 2024, where the two discussed the amount of available cash in the Manager's Office.  Specifically, Suspect-4 advised that two days before the robbery on January 7, 2024, that the Manager's Office currently held $6,000.00 in U.S. Currency with an additional $1,000.00 in quarters and that she had relayed this information to Defendant-3 (G. Robinson).

In the days after the robbery, Defendant-3 (G. Robinson) texted Defendant-2 (K. Williams) that he should have robbed Victim-8 during the robbery.  In response, Defendant-2 (K. Williams) indicated he would take care of her next time, stating "it's aight I got her ass next go round." Defendant-2 (K. Williams) then indicated they should bring the assault rifle (the chop stick) because they are getting free handguns ("hand joints") out of the robberies – stating: "Why we need to grab that chop stick we get hand joints for free around here [laughing emoji]."

*Cell Site Evidence*

Cell Site Evidence from this evening shows Defendant-2 (K. Williams) and Defendant-3 (G. Robinson) travelling together from Defendant-3 (G. Robinson) and Suspect-4's residence in Washington D.C. to the area of the Chinatown Walgreens around the time of the robbery, and then travelling together afterwards to Defendant-2 (K. Williams)'s residence.   Finally, Cell Site Evidence, as well as surveillance video of the residence, show Defendant-1 (M. Robinson), Defendant-3 (G. Robinson), and Suspect-4 all met up later that night at Defendant-3 (G. Robinson) and Suspect-4's residence later that evening.

<u>Robbery 7 and Shooting of Defendant-2 (K. Williams) – February 11, 2024</u>

On February 11, 2024, at approximately 6:28 p.m., an armed SPO ("Victim-9") was escorting Defendant-1 (M. Robinson) to the Manager's Office while carrying cash from the day. Defendant-1 (M. Robinson) inputted the code to the Manager's Office when Defendant-2 (K. Williams) appeared and pressed a firearm against Victim-9 and threatened to kill him.  Defendant-1 (M. Robinson), Defendant-2 (K. Williams), and Victim-9 entered the Manager's Office and Defendant-2 (K. Williams) proceeded to take Victim-9's firearm and cash brought in by Defendant-1 (M. Robinson).  After the cash was in his bag, Defendant-2 (K. Williams) attempted to leave the Manager's Office and as he was opening the door, a second armed SPO fired one round at Defendant-2 (K. Williams), striking him in the chest.   Defendant-2 (K. Williams) was then taken to the hospital.

Call logs show that immediately after the shooting, Defendant-1 (M. Robinson)'s first call was to Defendant-3 (G. Robinson). Surveillance and Cell Site Evidence shows that Defendant-3 (G. Robinson) then travelled to the hospital where Defendant-2 (K. Williams) was being treated. At the hospital, Defendant-3 (G. Robinson) was observed by law enforcement standing out front of the Emergency Room. Cell Site Evidence also showed Defendant-2's (K. Williams) and

Defendant-3 (G. Robinson) in the vicinity of the hospital at the time Defendant-2 (K. Williams) was in the Emergency Room.

<u>Arrest of Defendant-3 (G. Robinson) and Search of Defendant-3 (G. Robinson)<br>and Suspect-4's Residence</u>

On February 12, 2024, law enforcement obtained an arrest warrant and complaint charging Defendant-3 (G. Robinson) with violating of 18 U.S.C. § 1951 (Conspiracy to Interfere with Interstate Commerce by Robbery), and a warrant authorizing the search of Defendant-3 (G. Robinson) and Suspect-4's residence (the "Residential Search Warrant"). The residence is a one-bedroom apartment with an open air style kitchen and living room that is separated by the kitchen island. A door separates the bedroom from the living room.

The Residential Search Warrant was executed at approximately 9:53 p.m. on February 12, 2024. Located within the residence were six individuals, including Defendant-3 (G. Robinson) and Suspect-4, and two young juveniles. (Only Defendant-3 (G. Robinson) and Suspect-4 are listed on the lease.). The following items were recovered:

- A loaded Glock 45 pistol with a sixteen (16) round magazine was recovered in an unsecured state from the bedroom floor. The magazine was loaded with sixteen (16) rounds of nine (9) millimeter ammunition.

- One (1) bullet in a plastic bag by the TV stand and closet.

- One (1) loose bullet in the closet

- Black "Nike" branded gloves

- Black "Nike" branded ski mask

At the time law enforcement entered the residence, Suspect-4 was in bed inside the bedroom where the Glock 45 was found. Defendant-3 (G. Robinson) was standing in the doorway

of the bedroom in underwear and no t-shirt, presumably preparing to go to bed.  The remaining individuals in the residence were located in the living room.

## **ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).  The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community.  *See id.* The crimes triggering such rebuttable presumptions need not be expressly included in the charging instrument.  *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (holding that "the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.")  Instead, "[if] the facts establish probable cause that the defendant has [committed such an offense], the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community when applying the § 3142(g) factors."  *Id.*

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted,

and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).  *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.  *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

## I.      <u>The Nature and Circumstances of these Offenses Merit Detention.</u>

Defendant-3 (G. Robinson) is directly responsible for seven (7) armed robberies of the Chinatown Walgreens.  The "best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple people—could be killed or seriously injured." *United States v. Lee*, 195 F. Supp. 3d 120, 129 (D.D.C. 2016) (ABJ) (finding detention appropriate for a defendant charged with one Hobbs Act robbery where his co-conspirators possessed guns). This is the reality that Defendant-3 (G. Robinson) faces before the Court today, as his friend and co-conspirator Defendant-2 (K. Williams) lays in a hospital bed with a bullet hole in his chest.

And it is "of no moment" that Defendant-3 (G. Robinson) is not alleged to be the actual robber in any of the robberies, for he was an "active part of the team." *Id.* (holding the defendant pretrial even though he did not personally brandish the firearm, where his co-conspirator did). There is also ample evidence, before and during the conspiracy, that Defendant-3 (G. Robinson)

was actively interested in illegally purchasing firearms, further underlying the extent of his participation and dangerousness.

Given the nature and circumstances of the seven robberies and the defendant's conduct throughout, even the most stringent release conditions cannot assure the safety of the public should Defendant-3 (G. Robinson) be released.  Defendant-3 (G. Robinson) sent an armed gunman into a highly trafficked store in one of the most populated areas in Washington D.C. seven times.  He did so after Defendant-2 (K. Williams) described that he wanted to "go in violently now," days prior to the September 2, 2023, robbery.   And he also did so after equipping Defendant-2 (K. Williams) with tactical knowledge of the Chinatown Walgreens, including the most vulnerable times to strike, codes to restricted areas, and escape routes.

Defendant-3 (G. Robinson)'s digital footprint provides insight into his mindset during the pendency of the conspiracy.  Defendant-3 (G. Robinson) viewed the Chinatown Walgreens as a personal bank account that could be drawn upon at a moment's notice.  Once information was supplied to him through his romantic partner Suspect-4 or his uncle Defendant-1 (M. Robinson), he would text Defendant-2 (K. Williams) and see if a robbery could take place that evening.  From behind his iPhone, Defendant-3 (G. Robinson) attempted to initiate dozens of failed robberies of the Chinatown Walgreens.  Defendant-3 (G. Robinson) was also aware that innocent bystanders, whether they were Chinatown Walgreens employees or not, likely could have been harmed by his actions. He was, for example, aware of how populated the Chinatown Walgreens is, as he sent mocking text messages containing YouTube videos to Defendant-2 (K. Williams) showing surveillance video with numerous innocent bystanders in the store while the robberies occurred. And he was aware that armed law enforcement was present, as a number of the robberies were called off due to MPD presence.  Additionally, while Suspect-4 or Defendant-1 (M. Robinson)

were at times alone inside the Manager's Office, there were at least nine innocent victims also present across the seven armed robberies.

The nature and circumstances of the offenses weigh heavily in favor of detention.

## II.     <u>The Weight of the Evidence Against the Defendants is Overwhelming.</u>

The evidence against Gianni Robinson is overwhelming, which weighs in favor of pretrial detention.[9]  *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023). ("[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true.").

The Cell Site Evidence outlined above was derived from a phone number provided by Defendant-3 (G. Robinson) himself during a car crash that occurred on December 1, 2023, and which was captured on body worn camera by an MPD officer.  That cell phone number provided historical location records dating back to July 1, 2023 and is consistent with Defendant-3 (G. Robinson)'s pattern of life, from where he slept at night, to the places he was observed on surveillance during the commission of the robberies. Furthermore, the cellular phone seized from Defendant-3 (G. Robinson) during the execution of the search warrant at his residence and during

---

[9]      This factor should be given equal weight in the Court's analysis of the § 3142(g) factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

his arrest match that cell phone number. This information supports Defendant-3 (G. Robinson)'s use of that phone during the course of the conspiracy.

Further, the digital evidence provides a timeline of Defendant-3 (G. Robinson)'s actions and statements from the beginning of the conspiracy to the very moment Defendant-2 (K. Williams) underwent emergency surgery at the hospital for his gunshot wound.  The weight of the evidence against Gianni Robinson militates heavily in favor of detention.

### III.    The Defendant's History and Characteristics Merit Detention.

Defendant-3 (G. Robinson) comes before the Court with no prior convictions. However, there is  extensive evidence of criminality in his digital devices, which provide insight into his history and characteristics.  From the beginning of the conspiracy to the end, Defendant-3 (G. Robinson) is seen engaging in multiple forms of criminal schemes.  These include the discussions of purchasing illegal firearms with Defendant-2 (K. Williams), who Defendant-3 (G. Robinson) knows to be a felon, as they are seen discussing his court dates over text messages.  Defendant-3 (G. Robinson) is also seen in text messages with Defendant-2 (K. Williams) and Defendant-1 (M. Robinson) constantly searching for marijuana and prescription pills, some of which he stated he resells to others.

He and  Defendant-2 (K. Williams)'s discussions involving different robbery schemes should also be considered.  For example, in the month of June of 2023, Defendant-3 (G. Robinson) texted Defendant-2 (K. Williams) that a female friend of his got a Glock 43 firearm and that he was looking to rob her for it, but needed an "inside" person to help him.  In another instance in November of 2023, Defendant-3 (G. Robinson) texted Defendant-2 (K. Williams) a news report where individuals robbed a gun store located in Damascus, Maryland and how it was "supposed to be us" that did the robbery.  Defendant-3 (G. Robinson) then texted numerous times about how

he wanted to start robbing pharmacies by himself.  His self-stated reasons were that he wanted enough cars in front of his house to look like the video game "Grand Theft Auto" because he "needed that lifestyle" and that he "deserved it."  The information, along with other digital evidence obtained by the government, show the defendant's history and characteristics weigh in favor of detention.

### IV.    Gianni Robinson Presents a Danger to Our Community.

This final factor weighs heavily in favor of detention.  Defendant-3 (G. Robinson) has already caused severe damage to our community. Further, the shooting of Defendant-2 (K. Williams) stemmed from his criminality and that of his co-conspirators.  He has traumatized at least nine (9) employees of the Chinatown Walgreens.  He has caused an unquantifiable amount of danger in downtown Washington D.C. by exposing citizens of the District of Columbia to a potential shootout.

Defendant-3 (G. Robinson) has shown a willingness to go to great lengths to plan and effectuate criminal schemes that present great danger to the public.  He has also shown that he can plan those schemes in such a way that are designed to fool law enforcement. There is a high likelihood that Defendant-3 (G. Robinson) will immediately re-engage in dangerous criminal conduct if he is placed on pretrial release.  As such, this factor weighs heavily in favor of detention.

## CONCLUSION

For these reasons, Defendant-3 (G. Robinson) cannot overcome the presumption of detention and should be detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

D.C. Bar No. 481052

*/s/ Justin F. Song*
JUSTIN F. SONG
Assistant United States Attorney
N.Y. Attorney No. 5626379
601 D Street NW
Washington, D.C. 20530
(202) 227-9019
Justin.Song@usdoj.gov